IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| SHANE McCLANAHAN, | Cause Nos. CV 11-092-M-DWM-JCL |
| | CV 11-117-M-DWM-JCL |
| Petitioner, | |
| | |
| vs. | COMBINED ORDER TO STATE |
| | TO FILE ANSWER and |
| WARDEN LEROY KIRKEGARD; | FINDINGS AND RECOMMENDATION |
| ATTORNEY GENERAL OF THE | OF U.S. MAGISTRATE JUDGE |
| STATE OF MONTANA, | |
| | |
| Respondents. | |

_____

On June 21, 2011, Petitioner Shane McClanahan filed an action for writ of habeas corpus under 28 U.S.C. § 2254 in the District of New Mexico, where he was incarcerated at the time. McClanahan is a state prisoner proceeding pro se.

Chief Judge Black of the District of New Mexico transferred the action to this Court. On August 2, 2011, McClanahan filed an Amended Petition. Because he challenged more than one judgment, *see* Am. Pet. at 2 ¶ 3, 3 ¶ 2, the action was severed into two cases. On September 1, 2011, Respondent ("the State") was ordered to file the state court record in each case. It did so on October 31, 2011. However, further review of the records indicated that several post-judgment matters were not

1

sufficiently explained by the record as filed. On January 5, 2012, the State was ordered to file additional documents. On February 27, 2012, the State again complied.

Although two separate judgments are challenged in these two actions, they became procedurally entangled to some extent in the state proceedings. In addition, McClanahan filed one Amended Petition without identifying which conviction he was challenging. Accordingly, both judgments will be addressed together in this Order.

After filing the petition, McClanahan was transferred back to Montana. He is currently incarcerated at the Montana State Prison. Warden Leroy Kirkegard is therefore the proper Respondent, and the caption of the case will be amended to reflect that fact. *See Rumsfeld v. Padilla*, 542 U.S. 426, 438 (2004) (discussing *Braden v. 30th Judicial Cir. Court*, 410 U.S. 484, 446 (1973)); Rule 2(a), Rules Governing § 2254 Cases.

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.* If summary dismissal is

not warranted, the judge must order the respondent to file an answer, motion, or other response, or "to take other action the judge may order." *Id.*

## II. Background

McClanahan was convicted in 2002 in Montana's Fourth Judicial District Court of two counts of attempted deliberate homicide. Although he was convicted of attempt, this case will be referred to as "the homicide case" solely for ease of reference. McClanahan was also convicted in the same judicial district in 2006 of sexual intercourse without consent. This case will be referred to as "the rape case." This Court's Cause No. CV 11-92-M corresponds to the homicide case. Cause No. CV 11-117-M corresponds to the rape case.

### A. Matters Concerned

Citations to the documents from the state court record are abbreviated from the prescribed Blue Book form. The matters concerned are:

- *State v. McClanahan*, No. DC-01-422 (Mont. 4th Jud. Dist. filed Oct. 9, 2001), the homicide case;

- *State v. McClanahan*, No. DC-02-176 (Mont. 4th Jud. Dist. filed May 23, 2002), the rape case;

- *McClanahan v. State*, No. DV 03-333 (Mont. 4th Jud. Dist. filed Apr. 11, 2003), the postconviction case, which relates to the homicide case, No. DC-01-422;

- *McClanahan v. State*, No. OP 03-216 (Mont. filed Apr. 22, 2003), a

petition for writ of supervisory control which was construed as a petition for postconviction relief against the homicide convictions and remanded to the trial court;

- *McClanahan v. State*, No. OP 03-555 (Mont. filed Aug. 22, 2003), a petition for writ of habeas corpus challenging the homicide convictions;

- *McClanahan v. State*, No. OP 04-520 (Mont. filed Aug. 5, 2004), in which a pleading styled as an "Anders Motion" was construed as a motion for out-of-time appeal of the homicide case;

- *McClanahan v. State*, No. OP 04-823 (Mont. filed Dec. 22, 2004), a petition for writ of supervisory control;

- *McClanahan v. State*, No. OP 05-053 (Mont. Jan. 31, 2005), a petition for writ of mandate concerning the postconviction case;

- *State v. McClanahan*, No. DA 05-317 (Mont. filed Mar. 9, 2005), the homicide appeal; and

- *McClanahan v. State*, No. OP 07-0207 (Mont. filed Mar. 26, 2007), a petition for writ of supervisory control which was construed as a motion to file an out-of-time appeal of the rape case.

## B. Proceedings in State Court

Because the procedural history of McClanahan's litigation in state court is lengthy and complex, it is set forth here in an attempt to either clarify it or display any misunderstanding of what has occurred so the parties can correct it.

McClanahan was charged on October 9, 2001, with two felony counts of attempted deliberate homicide, a violation of Mont. Code Ann. § 45-5-102 (2001), and one misdemeanor count of assault resulting in bodily injury, a violation of Mont.

Code Ann. § 45-5-201. The charges were based on McClanahan's stabbing of two persons at a party. He was represented by Bryan Tipp and Richard Buley; Buley represented him at trial. Trial Court Docket at 1, DC-01-422 (doc. 19-1).[1]

On May 23, 2002, while McClanahan was detained pending trial on the homicide charges, he was charged with one count of sexual intercourse without consent, a violation of Mont. Code Ann. § 45-5-503 (2001), based on the rape of his cell mate. Trial Court Docket, DC-02-176 (doc. 11-1); Trial Tr. at 79:1-5, DC-02-176 (doc. 11-4). The Public Defender's Office was appointed to represent him. Trial Tr. at 4:16-20, DC-02-176 (doc. 11-2).

Trial in the attempted homicide case commenced on July 10, 2002. On July 16, 2002, the jury returned a verdict of guilty on the two attempted homicide counts and not guilty on the assault count. Trial Tr. at 568:6-14, DC-01-422 (doc. 19-8). On November 19, 2002, McClanahan was sentenced to serve 100 years on each count, concurrently, with 25 years suspended on each count, concurrently. *Id*. at 585:2-8.

On December 2, 2002, based in part on statements McClanahan made at sentencing, *see* Sentencing Tr. at 575:10-584:19, DC-01-422 (doc. 19-8), Richard Buley was permitted to withdraw from representation in the homicide case. The

---

[1] Citations to docs. 11 or 35 refer to the file in this Court's Cause No. CV 11-92-M. Citations to doc. 19 refer to the file in this Court's Cause No. CV 11-117-M.

Public Defenders Office was appointed in Buley's stead but did not appear on the list of parties receiving notice of the Order. Order at 1, DC-01-422 (doc. 35-2).

On April 11, 2003, McClanahan filed a petition for writ of supervisory control in the Montana Supreme Court, alleging errors in the homicide case. Pet. for Writ, OP 03-216 (doc. 35-6). Supervisory control was denied, but the petition was recharacterized as a petition for postconviction relief and transferred to the trial court for further proceedings. Order at 2, OP 03-216 (doc. 35-7). On May 19, 2003, the State filed a motion to dismiss the petition and a brief in support. Mot. and Br., DC-01-422 (docs. 35-8, 35-9).

On August 5, 2003, the trial court entered an order granting McClanahan leave to proceed pro se in the postconviction proceeding. Order at 1, DC-01-422 (doc. 35-10). The order was apparently made necessary by the clerk's refusal to file certain documents on the ground that McClanahan was represented by counsel. *E.g.*, Letter of July 22, 2004, DC-01-422 (doc. 35-14).[2]

On August 22, 2003, McClanahan filed a petition for writ of habeas corpus in the Montana Supreme Court, again raising claims regarding counsel's performance

---

[2] It is not clear whether McClanahan received the order. The cc: line indicates it was sent to a different litigant, one Kori Lake, in Shelton, Washington, and to "CA Donovan," presumably Mineral County Attorney Shaun Donovan, rather than Missoula Deputy County Attorney Dale Mrkich. Order at 1, DC-01-422 (doc. 35-10).

and the validity of his conviction in the homicide case. The Montana Supreme Court dismissed the petition pursuant to state law, *see* Mont. Code Ann. § 46-22-101 (2001), noting that McClanahan's postconviction petition remained pending in the trial court. Order at 2, OP 03-555 (doc. 35-13).

On August 5, 2004, McClanahan filed an "Anders Motion" in the Montana Supreme Court, complaining of the lack of progress in his postconviction proceedings in the homicide case, the lack of contact with his appointed counsel, and his inability to obtain documents from the trial court through his own efforts to prepare an appeal. Anders Mot. at 1-3, OP 04-520 (doc. 35-14). The Montana Supreme Court ordered the Public Defenders Office to respond. Order at 1, OP 04-520 (doc. 35-15). Eventually, the Public Defenders Office responded that it first received notice of the December 2, 2002, appointment on February 19, 2004; that McClanahan had asserted a conflict with the Office in the rape case and the Office had withdrawn from representing him in that matter; and that new counsel was sought for both the rape case and the appeal in the homicide case but the homicide appeal was inadvertently dropped. The response concluded by requesting that counsel be appointed to represent McClanahan in the postconviction proceedings in the homicide case in the trial court. Resp. to Mot. at 1-3, OP 04-520 (doc. 35-20). The Montana Supreme Court then ordered a response from the State. Order at 1, *McClanahan*, No. OP 04-

520 (Mont. Oct. 14, 2004).

Meanwhile, on October 22, 2004, McClanahan moved in the trial court for a copy of all transcripts and orders in the homicide case underlying the postconviction case. Mot. for Complete Record at 1-2, DV-03-333 (doc. 35-22).

On October 25, 2004, the State responded to McClanahan's "Anders Motion" in the Montana Supreme Court. It requested that McClanahan be allowed an out-of-time appeal with appointed counsel but that the postconviction proceedings in the trial court be stayed pending resolution. State's Resp. to Mot. at 1, *McClanahan*, No. OP 04-520 (Mont. Oct. 25, 2004).

On November 5, 2004, the trial court denied the postconviction petition because "Petitioner has failed to state a claim for relief, and has not shown that any matter set forth could not have been raised on appeal." Order at 2, DV-03-333 (doc. 35-25).

On November 17, 2004, the Montana Supreme Court granted McClanahan an out-of-time appeal, stayed the postconviction proceedings, and remanded the matter to the trial court for vacatur and re-entry of judgment as well as appointment of counsel to prosecute an appeal. Order at 2-3, OP 04-520 (doc. 35-27). The Order was filed in the trial court on November 19, 2004. Order, OP 04-520 (doc. 35-28).

On December 7, 2004, McClanahan filed another petition for writ of

supervisory control in the Montana Supreme Court. The court denied the petition on the grounds that McClanahan's complaints concerned the two criminal cases, neither of which was pending. Order at 1-2, OP 04-823 (doc. 35-30).

On January 31, 2005, McClanahan filed a petition for writ of mandamus (writ of mandate) in the Montana Supreme Court and an "addendum" on February 4, 2005. He asserted that the trial court had taken no action on the Montana Supreme Court's remand of November 17, 2004. Pet. for Writ at 1-2, OP 05-053 (doc. 35-31); Addendum, OP 05-053 (doc. 35-32).

On February 14, 2005, the trial court vacated the judgment of November 5, 2004, denying postconviction relief. Order at 1, DV-03-333 (doc. 35-33). It also vacated the November 25, 2002, judgment in the homicide case and re-entered it as of February 14, 2005. Judgment at 1, DC-01-422 (doc. 35-34). The next day, the trial court appointed William Boggs to represent McClanahan in the homicide appeal. *See* Mot. to Withdraw, DC-01-422 (doc. 35-37).

On February 16, 2005, the Montana Supreme Court ordered the trial court to respond to McClanahan's petition for writ of mandate. Order at 2, OP 05-053 (doc. 35-35). The order was filed in the trial court on February 17, 2005. Order, OP 05-053 (doc. 35-36).

On February 17, 2005, Ed Sheehy filed a notice of appearance in the rape case,

replacing Paulette Ferguson, who had been the fourth attorney appointed in that matter. Trial Court Docket at 3, Entry 60 (doc. 11-1).

On February 18, 2005, William Boggs moved to withdraw from representation on the grounds that McClanahan had previously been represented by Boggs's associate and McClanahan had filed a false claim of conflict of interest against her to obtain her removal from the case. Mot. and Aff., DC-01-422 (docs. 35-37, 35-38).

On February 24, 2005, McClanahan filed an "emergency addendum" to his petition for writ of mandate, complaining of Boggs's appointment. Emergency Addendum, OP 05-053 (doc. 35-39).

On March 1, 2005, the trial court granted Boggs's motion to withdraw and appointed Ed Sheehy to represent McClanahan in the homicide appeal. Order at 1, DC-01-422 (doc. 35-40). On March 2, 2005, the Montana Supreme Court "denied and dismissed" McClanahan's petition for writ of mandate. Order at 2, OP 05-053 (doc. 35-41).

On March 9, 2005, Sheehy filed a notice of appeal against the judgment entered in the homicide case on February 14, 2005, and moved for a copy of the transcripts at State expense. Notice of Appeal at 1, Request for Transcripts at 1, DC-01-422 (docs. 35-43, 35-44). The motion was granted and the transcripts were prepared. Orders, DC-01-422 (docs. 35-46, 35-48).

On May 13, 2005, McClanahan apparently filed a "Motion for Effective & 'New' Assistance of Counsel" in the rape case, No. DC-02-176. Sheehy's copy of the motion, which is not file-stamped, is the document in the Court's record. *See* Mot. at 1, DC-02-176 (doc. 35-50). Sheehy filed a notice of McClanahan's request for new counsel with the trial court. Trial Tr. at 36:10-17, DC-02-176 (doc. 11-3). On May 24, 2005, after a hearing, the trial court permitted Sheehy to withdraw from representation in the rape case. *Id.* at 45:8-14; Minutes, DC-02-176 (doc. 35-50).

On June 9, 2005, Sheehy moved to withdraw as counsel in the homicide appeal as well. Mot. to Withdraw at 1-2, DC-01-422 (doc. 35-50). On June 13, 2005, the motion was granted, and McClanahan was ordered to state, within ten days, whether he wished to proceed pro se with the appeal or have new counsel appointed. Order at 1, DC-01-422 (doc. 19-9). On June 17, 2005, Sheehy filed a similar motion in the Montana Supreme Court. Mot. to Withdraw, DA 05-317 (doc. 35-50).

On July 5, 2005, noting that McClanahan had not responded to the trial court's order, the Montana Supreme Court stated that McClanahan was deemed to be proceeding pro se and extended his time to file his opening brief. Order at 1, DA 05-317 (doc. 35-51).

On July 12, 2005, McClanahan filed a "Declaration of Foul Play and Motion for Immediate Injunctive Relief" in the homicide appeal. He did not, however, ask

11

the trial court to appoint counsel. Consequently, the Montana Supreme Court denied his request for injunctive relief and reiterated the deadline for filing his brief. Order at 1, DA 05-317 (doc. 35-51).

Although it is clear that new counsel Nicholas P. Anderson appeared in the rape case sometime before August 9, 2005, *see* Trial Tr. at 51:5-13, DC-02-176 (doc. 11-3), the record does not show what, if anything, transpired in the homicide case or the homicide appeal in the Montana Supreme Court between July 12, 2005, and December 13, 2005. Trial Court Docket at 4 (doc. 19-1); Supreme Court Docket, 05-317, *available at* http://supremecourtdocket.mt. gov (accessed June 8, 2012). But, on December 14, 2005, the trial court issued an order in the homicide case stating it would appoint Anderson provided he was willing to undertake the matter. Order at 1-2, DC-01-422 (doc. 35-54). On January 3, 2006, the Montana Supreme Court gave McClanahan another 30 days to file a brief. Order at 1, DA 05-317 (doc. 35-55). On January 9, 2006, McClanahan asked for more time to find counsel. Request for Add'l Time at 1, DA 05-317 (doc. 35-56). On January 12, 2006, Anderson entered a conditional notice of appearance in the homicide appeal and requested more time to file the brief on McClanahan's behalf. Conditional Notice at 2, DA 05-317 (doc. 35-57). The Montana Supreme Court granted the motion on January 13, 2006. Order at 1, DA 05-317 (doc. 35-58). On January 24, 2006, the trial court appointed Anderson.

Order at 1-2, DC-01-422 (doc. 35-59). The Montana Supreme Court subsequently remanded the file to the trial court and granted two more extensions of time. Orders, DA 05-317 (docs. 35-61, 35-62, 35-65).

Anderson filed the opening appellate brief on McClanahan's behalf on June 26, 2006. He asserted that trial counsel Buley was ineffective because he failed to call McClanahan's doctor to substantiate the possible cause of McClanahan's injuries and failed to call McClanahan's wife to testify that he did not have a "dent" in his head before the party. Anderson also asserted that the trial court erred in refusing McClanahan's proposed jury instruction defining "reasonable doubt." Appellant Br. at 4-11, DA 05-317 (doc. 19-11).

Trial of the rape case commenced on June 27, 2006. McClanahan was represented by Anderson. Trial Tr. at 69:1-7, DC-02-176 (doc. 11-4). On June 29, 2006, the jury returned a guilty verdict. *Id.* at 481:5-10 (doc. 11-9). On September 11, 2006, McClanahan was sentenced to serve twenty-five years in prison, consecutive to his sentences for attempted deliberate homicide. Sentencing Tr. at 491:18-21, DC-02-176 (doc. 11-9). He was advised of his right to appeal and stated he wanted to appeal, *id.* at 493:1-5, but no notice of appeal was entered on his behalf.

On September 25, 2006, the State filed its response brief in the homicide appeal. Resp. Br., DA 05-317 (doc. 19-12).

13

Judgment was entered in the rape case on October 6, 2006. Trial Court Docket at 6, DC-02-176 (doc. 11-1). McClanahan had sixty days to file a notice of appeal, Mont. R. App. P. 5(b),[3] or until December 5, 2006.

On March 26, 2007, McClanahan filed a petition for writ of supervisory control in the Montana Supreme Court. He stated that Anderson abandoned the appeal in the rape case, DC-02-176. He also averred that Anderson denied McClanahan transcripts of the proceedings in the homicide case and "refused all my appeal requests" except the first appellate issue. Pet. for Writ at 1, OP 07-207 (doc. 35-73).

Following an order of the Montana Supreme Court, Anderson responded to McClanahan's allegations on April 16, 2007. Resp. to Pet. for Writ, OP 07-207 (doc. 35-74). On April 18, 2007, the Montana Supreme Court ordered Anderson either to move to file an out-of-time appeal in DC-02-176 or to file an *Anders* brief. It also dismissed the petition as a petition for writ of supervisory control. Minute Order Apr. 18, 2007, Supreme Court Docket, OP 07-207, *available at* http://supremecourtdocket.mt.gov (accessed June 8, 2012). On May 2, 2007, Anderson moved to withdraw as counsel. Mot. to Withdraw, OP 07-207 (doc. 35-75). On May 9, 2007, McClanahan filed a response, raising several arguments against his rape conviction and requesting transcripts. Resp. to Anders Br., OP 07-207 (doc. 35-76).

---

[3]  Now Mont. R. App. P. 4(5)(b)(i) (eff. Oct. 1, 2007).

On May 23, 2007, the Montana Supreme Court ordered the preparation of transcripts and stated it would consider the proceeding as a motion for out-of-time appeal. Minute Order May 23, 2007, Supreme Court Docket, OP 07-207, *available at* http:// supremecourtdocket.mt.gov (accessed June 8, 2012). Anderson later filed another motion to withdraw and an *Anders* brief, which briefly stated the issues McClanahan seemed to want to raise. *Anders* Br. at 6-7, OP 07-207 (doc. 35-78). McClanahan again responded on August 6, 2007. Second Resp. to Anders Br., OP 07-207 (doc. 35-79). On September 19, 2007, the Montana Supreme Court granted Anderson's motion to withdraw, denied leave to file an out-of-time appeal, and dismissed the action. Order at 1, OP 07-207 (doc 35-80).

On November 20, 2007, the Montana Supreme Court affirmed McClanahan's convictions for attempted deliberate homicide. Order at 5 ¶ 11, DA 05-317 (doc. 19-13). Remittitur issued on December 6, 2007. Supreme Court Docket, 05-317, *available at* http://supremecourtdocket.mt. gov (accessed June 8, 2012).

On December 26, 2007, the trial court reinstated its Order of November 5, 2004, "as it is consistent with the Supreme Court opinion." Order at 1, DC-01-422 (doc. 35-81). Neither the records of the trial court nor the records of the Montana Supreme Court show any further action by McClanahan.

### III. Claims

In alleging his claims, McClanahan does not differentiate between the homicide case and the rape case. He simply states, first, that he "pled the Fifth Amendment multiple times upon being arrested" but "was refused medical care until I would agree to talk to deputies." He claims he was arrested "out of [his] home" at 3 a.m. without a felony warrant when he had an open head wound and a broken leg. He was refused medical care until he would agree to talk to deputies. A week later, after both a magistrate judge and a district judge[4] ordered him to be taken to a hospital, he finally received medical care. The "semi-confession" he made at the time of his arrest was used against him in violation of his express invocation of the Fifth Amendment. Am. Pet. at 5 ¶ 15A.

Second, McClanahan asserts that the witnesses and victims "made multiple and very different statements to deputies." He complains that these statements were not provided to him or his lawyer before trial. *Id.* ¶ 15B.

Third, McClanahan alleges that his trial attorney was ineffective because he failed to call defense witnesses and, in particular, failed to call the doctor who treated McClanahan's leg. McClanahan claims the doctor could have testified that his leg

---

[4] McClanahan means a justice of the peace and the trial court judge. *E.g.*, Sentencing Tr. at 576:8-15, DC-01-422 (doc. 19-8). McClanahan has filed civil actions in this Court, but the first was filed in 2004.

was broken by a blunt instrument wielded from behind him and that the leg wound "matched the open head wound trauma." *Id.* ¶ 15C.

Fourth, McClanahan avers that his attorney failed to file a notice of appeal despite McClanahan's oral reservation of his right to appeal and written motion, which he gave to the bailiff. *Id.* ¶ 15D.

Fifth, McClanahan claims that someone forged his written waiver of his right to a speedy trial though he did not want to waive the right. Am. Pet. at 7 ¶ 15E.

Sixth, McClanahan refers to his website and to a page allegedly contributed by the American Innocence Project and "what the[ir] accredited P.I. investigations have resulted in." *Id.* ¶ 15F.

## IV. Analysis

Some or all of McClanahan's claims may be barred on procedural grounds, such as procedural default or the federal statute of limitations. Those defenses, if applicable, must be raised by the State in its response to the claims identified below. As to some claims, it is clear that McClanahan is not entitled to relief on the merits. They will be recommended for denial at this time in order to narrow the issues. *See, e.g.*, 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

## A. Fourth and Fifth Amendment Claims

McClanahan was not arrested at his home on the rape charge, and no statements by him were introduced into evidence at the rape trial. Therefore, these claims relate only to the homicide case.

At trial, McClanahan's attorney asked him whether he "voluntarily g[a]ve a statement to Detective Newlon." McClanahan responded, "Yeah, yeah." Trial Tr. at 489:11-13. Newlon also gave McClanahan a *Miranda* warning. *Id.* at 426:23-25. Any claim related to McClanahan's statements to Detective Newlon at the detention center late in the morning following the incident should be denied. His claims regarding the delay in his access to medical care after his arrest are therefore irrelevant and should not be further considered.

However, the record currently before the Court does not clearly establish that McClanahan had a full and fair opportunity to litigate the legality of his arrest. *Stone v. Powell*, 428 U.S. 465, 494 (1976). Nor does it clearly establish all the circumstances in which he made statements at his home that were later used against him at trial. If McClanahan's statements to Deputies Tillman and Dominick were the fruits of an unlawful arrest or were otherwise obtained by coercion or exploitation of McClanahan's injuries, and if he did not have a full and fair opportunity to litigate those claims, and if the statements he made were sufficiently prejudicial to him at

trial, he might be entitled to relief.  Accordingly, an Answer is required on these claims.

### B. Witness Statements

McClanahan claims that both the prosecution and his own counsel did not provide *him* with witness statements before trial.  He also seems to claim that some statements were not produced to defense counsel before trial.  Am. Pet. at 5 ¶ 15B.

Witnesses commonly make multiple and inconsistent statements.  There is nothing unconstitutional about that.  The Constitution does not require that witness statements be provided to the defendant personally.  To the extent McClanahan seeks relief on either of these bases, he fails to state a claim.

Nor does the Constitution require that witness statements be provided to defense counsel *before* trial.  *See, e.g.*, Fed. R. Crim. P. 26.2(a); 18 U.S.C. § 3500(a)-(b) (requiring production of witness statements after witness completes testimony on direct examination at trial).  Although it is clear that a witness statement must be provided to the defense if it is exculpatory or useful for impeachment at trial, *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), federal law does not otherwise dictate when it must be provided.  Because McClanahan claims only that witness statements were not provided *before* trial, he does not allege a constitutional violation.

This claim should be denied as to both cases.

## C. Ineffective Assistance of Counsel

Claims of ineffective assistance are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). McClanahan must show both that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

### 1. Failure to Call McClanahan's Physician

This claim relates only to the homicide case. Although, in the usual course of events, it should have been raised in postconviction proceedings, it does not appear that McClanahan had the opportunity to do that.[5] To assist the State in preparing its response to the claim, it may be helpful to explain why the Court believes it is appropriate to proceed on the claim. But no final decision on any of these issues is made here.

In McClanahan's out-of-time appeal, the Montana Supreme Court held that

---

[5] In the document that became his postconviction petition, McClanahan summarily alleged the facts underlying this claim. Pet. for Writ at 2-3, 4, OP 03-216 (doc. 35-6).

Buley's decision not to call McClanahan's physician was a "decision[] related to presenting a case," "constitut[ing] trial tactics and strategy, and we will not conclude that counsel is ineffective based on such decisions." Order at 3 ¶ 7, DA 05-317 (doc. 19-13). That decision appears to have been an unreasonable application of *Strickland*, 28 U.S.C. § 2254(d)(1), as the Montana Supreme Court itself later seemed to recognize, *see State v. Whitlow*, 183 P.3d 861, 866 & n.4 (Mont. 2008). In addition, the Montana Supreme Court's decision deprived McClanahan of the opportunity to develop the facts underlying the claim, because the trial court relied on the Montana Supreme Court's conclusion in dismissing the postconviction petition – indeed, it was law of the case at that point. *See* Order at 1, DC-01-422 (doc. 35-81); 28 U.S.C. § 2254(e)(2). Further, appellate counsel's presentation, in the out-of-time appeal, of facts that were plainly outside the record, *see* Appellant Br. at 5, DA 05-317 (doc. 19-11), was both unreasonable, *e.g.*, Mont. R. App. P. 8(2), 12(1)(d), (f) (2007), and prejudicial because, as explained, it resulted in dismissal of McClanahan's claim before he had the opportunity to develop the underlying facts in the postconviction proceeding. That error was committed at a time when McClanahan had a constitutional right to the effective assistance of counsel, i.e., on direct, if out-of-time, appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Finally, to the extent the Montana Supreme

21

Court's analysis was an unreasonable application of *Strickland*, Anderson or McClanahan should have taken an appeal from the trial court's reiteration of the Montana Supreme Court's decision; but their failure to do so seems to fall under the rule of *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1317 (2012), constituting cause for the procedural default. While the claim may be time-barred, it appears unlikely that a statute of limitations defense could be decided without an evidentiary hearing. *See* Am. Pet. at 3 ¶ 2; *Roy v. Lampert*, 465 F.3d 964, 973 (9th Cir. 2006); *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005). Accordingly, an Answer is required on this claim.

### 2. Failure to File Notice of Appeal

#### a. Homicide Case

In the homicide case, the state's appellate process failed to function. Trial counsel was allowed to withdraw and new counsel was not advised of the appointment. McClanahan was unrepresented during the time when his opportunity to appeal was open.

But the Montana Supreme Court heard an out-of-time appeal. Because McClanahan had an appeal, his claim should be denied as to the homicide case.

#### b. Rape Case

States are not required to provide direct appeals, *McKane v. Durston*, 153 U.S.

684, 687 (1894), but if they do, they must observe the requirements of federal constitutional due process and equal protection, *e.g.*, *Griffin v. Illinois*, 351 U.S. 12, 18 (1956), including effective assistance of appellate counsel, *Evitts v. Lucey*, 469 U.S. 387, 397 (1985).

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Rodriquez v. United States*, 395 U.S. 327 (1969); *Peguero v. United States*, 526 U.S. 23 (1999)). Filing a notice of appeal when the client has asked counsel to do so is "a purely ministerial task," requiring no professional judgment by counsel. *Id.* at 477. The merit of the appeal is irrelevant, *Peguero*, 526 U.S. at 28 (quoted in *Flores-Ortega*, 528 U.S. at 477), because "the accused has the ultimate authority to make certain fundamental decisions regarding the case," including whether to appeal, *Jones v. Barnes*, 463 U.S. 745, 751 (1983). When counsel fails to file an appeal upon a client's instruction, "counsel's deficient performance has deprived respondent of more than a fair judicial proceeding; that deficiency deprived respondent of the appellate proceeding altogether." *Flores-Ortega*, 528 U.S. at 483; *see also Rodriquez*, 395 U.S. at 330.

On the other hand, once an appeal has been opened, "if counsel finds [appellant's] case to be wholly frivolous, after a conscientious examination of it, he

should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders v. California*, 386 U.S. 738, 744 (1967); *see also* Mont. Code Ann. § 46-8-103(2) (2007) (codifying *Anders* procedure). The appellant must be given an opportunity to respond personally, and the court must conduct "a full examination of all the proceedings to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.

Arguably, McClanahan's letter to Anderson on November 11, 2006, telling him to "[p]lease continue to hold up everything" while McClanahan and his family sought a new attorney, *see* Letter at 1 (doc. 35-74 at 12), constituted an instruction to file a notice of appeal to preserve McClanahan's right to an appellate proceeding.[6] Assuming that important fact, Anderson performed deficiently by failing to file a timely notice of appeal.

But, even so, McClanahan is not entitled to federal habeas relief on this claim. Unlike the petitioner in *Rodriquez*, he was not deprived of an appellate proceeding altogether. That is the injury the *Rodriquez* Court intended to redress and the reason

---

[6] Anderson explained, in his response to an order of the Montana Supreme Court, that he wrote to McClanahan after receiving this letter and "expressed concern that he had not told me what he wanted to do about the appeal." He also said he was "willing to file the notice of appeal for him to preserve the right, and that someone from the appellate division of the public defender's office could represent him." McClanahan failed to respond, so Anderson did not file the notice of appeal. Resp. to Pet. for Writ at 5, OP 07-207 (doc. 35/26-74).

the petitioner was not required to show merit in his appeal. McClanahan, by contrast, had the functional equivalent of an ordinary appeal – an *Anders* appeal, but an appeal nonetheless. The Montana Supreme Court "independently examined the record" and concluded that "an appeal in this case would be wholly frivolous." Order at 1, OP 07-207 (doc. 35-80); *see also* Mont. Code Ann. § 46-20-104(2) (2007) (defining scope of appeal by defendant). Although it also ruled that it would not allow an out-of-time appeal, Order at 1, OP 07-207 (doc. 35-80), it had already observed the procedures and considered the materials it would have observed and considered had an appeal been taken in the usual way. This claim should be denied.

### D. Speedy Trial

"[T]he right to a speedy trial is a more vague concept than other procedural rights. It is . . . impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). Consequently, no federal rule sets forth a specific period of time within which a trial must commence, and there is no delay, error, or ruling that immediately and necessarily means the speedy trial right has been violated. Courts must consider the conduct of both the prosecution and the defense and employ a balancing test weighing the length of the delay between charge or arrest and trial, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether he was prejudiced as a result of the delay. *Id.* at 530.

25

"[T]his process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.* at 533. Courts must also bear in mind, however, that "the ordinary procedures for criminal prosecution are designed to move at a deliberate pace." *United States v. Ewell*, 383 U.S. 116, 120 (1966), *quoted in Barker*, 407 U.S. at 521 n.15.

### 1. Homicide Case

Even assuming that someone forged McClanahan's waiver as he says, relief is available only if his federal right to a speedy trial was actually violated. It was not. McClanahan's trial commenced well within one year of his arrest. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (*Barker* analysis triggered as delay "approaches one year"). The length of the delay was unremarkable. In view of the seriousness of the charges and the many and conflicting statements of the witnesses, the reasons for the delay are obvious. Even assuming that McClanahan consistently demanded a speedy trial, and even if all the delay was attributed to the State, there was no violation of McClanahan's right to a speedy trial. The timing of his trial was fully consistent with "the ordinary procedures for criminal prosecution." This claim should be denied.

### 2. Rape Case

McClanahan was formally charged with rape on May 23, 2002. His trial

commenced on June 27, 2006, over four years later.  Although significant periods of time are undoubtedly attributable to McClanahan's cycling through six different attorneys, the record as it currently stands is not sufficient to allow a determination of what periods of delay were attributable to which party.  An Answer is required on this claim.

### E. Website

Courts do not accept unauthenticated and undocumented allegations as evidence.[7]  Nor do they scour websites for viable grounds for relief.  This claim should be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1.  The caption of both cases is AMENDED to add the name of Warden Leroy Kirkegard.

2.  The State is deemed served by electronic delivery of this Order to the Montana Department of Justice general e-mail address for court filings as well as to counsel C. Mark Fowler.

3.  The State must file an Answer to McClanahan's claims as directed in this

---

[7] To demonstrate the unauthenticated and undocumented nature of these allegations, a page of the website is attached to this Order.

Order on or before **July 31, 2012**. A motion in lieu of an Answer is not permissible, but the Answer may be accompanied by a motion.

4. Within twenty-one days after the State serves its Answer, McClanahan may file a Reply, limited to **ten (10) pages**, excluding exhibits. If the State also files a motion, McClanahan may respond to it within twenty-one days after its service. McClanahan's brief in response to any motion must be limited to **fifteen (15) pages**, excluding exhibits. The State may file a reply in support of any motion within fourteen days after filing of the response in accordance with D. Mont. L.R. 7.1.

5. **Unless State's counsel objects within seven (7) days of the date of this Order**, McClanahan need not serve on the State the materials he files with this Court. The State will be served via the electronic filing system. The State must, however, serve on McClanahan a complete copy of everything it submits to the Court.

The Court also enters the following:

## RECOMMENDATION

1. McClanahan's first claim should be DENIED as to the statements he made to Detective Newlon;

2. McClanahan's second claim should be DENIED in its entirety;

3. McClanahan's fourth claim should be DENIED in its entirety;

4.  McClanahan's fifth claim should be DENIED as to the homicide case, DC-01-422 and CV 11-92-M; and

5.  McClanahan's sixth claim, referring to his website, should be DENIED in its entirety.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), McClanahan may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  If McClanahan files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation.  Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude McClanahan from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation.  Failure to timely file written objections may bar a de novo determination by the district judge

and/or waive the right to appeal.

McClanahan must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of his case without notice to him.

DATED this 15th day of June, 2012.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge